[No. 662.    September 1, 1896.]

# DIONICIO SANDOVAL, PLAINTIFF IN ERROR, v. TERRITORY OF NEW MEXICO, DEFENDANT IN ERROR.

CRIMINAL LAW—MURDER—EVIDENCE—INSTRUCTION.—On a trial for mur-
der, where two witnesses for the prosecution, present at the killing,
testified that defendant came to the camp of deceased, armed with a
rifle, and, on deceased's saying to defendant that he had not delivered
to him all his sheep, defendant called him a liar, and shot him, and
defendant testified that deceased called him a liar, and then caught
hold of the rifle, and attempted to take it away from defendant, when
the rifle was accidentally discharged, and killed deceased.—*Held*,
that the court properly refused to give instructions either in the sec-
ond or third degrees.

ID.—MURDER—EVIDENCE—DEGREES—INSTRUCTIONS.—In such case, where
the evidence showed murder in the first degree, or excusable homi-
icide, and proper instructions were given on these degrees, an in-
struction which told the jury that in rendering their verdict they
must either find defendant guilty of murder in the first degree, or
that he was not guilty, was a proper instruction.

ERROR, from a judgment of conviction for mur-
der, to the Second Judicial District Court, Bernalillo
County.    Affirmed.

The facts are stated in the opinion of the court.

EDWARD L. MEDLER and G. W. JOHNSTON for
plaintiff in error.

The court erred in confining the jury to either a ver-
dict of murder in the first degree, or an acquittal.    The
jury should have been instructed as to murder in the
second and third degrees and allowed to· deliberate as
to these forms of verdict.    Kelner v. State, 63 Am.
Dec. 269; State v. Benham, 23 Iowa, 154; State v.
Benham, 92 Am. Dec. 417; People v. King, 87 Id. 95;
Ex parte Sloan, 11 S. Rep. 14; State v. O'Hara, 4
S. W. Rep. (Mo.) 422; 2 Bish. Crim. Law, sec. 679;

State v. Curtis, 70 Mo. 595; State v. Ellis, 74 Id. 207; State v. Holme, 54 Id. 153; Liskosski v. State, 3 S. W. Rep. 698; Robbins v. State, 8 Ohio St. 193; Beaudine v. State, Id. 638; Rhodes v. Comm., 46 Pa. St. 398; Lane v. Comm., 59 Id. 375; Shaffner v. Comm., 72 Id. 61; Fogg v. State, 50 Ark. 506; State v. Carr, 53 Vt. 37; 2 Bish. Crim. Prac., sec. 642; Adams v. State, 29 Ohio St. 412; 2 Whar. Crim. Law, sec. 1112; State v. Lindsey, 5 Pac. Rep. 822; Marshall v. State, 32 Fla. 462; Keener v. State, 63 Am. Dec. 269; State v. Turner, Wright (Ohio), 20; People v. Foren, 25 Cal. 361; Craft v. State, 3 Kan. 450; State v. Crabtree, 20 S. W. Rep. 7; Hapt v. Utah, 110 U. S. 582; State v. Perigo, 45 N. W. Rep. (Iowa) 399; State v. Berkley, 4 S. W. Rep. 24; Territory v. Friday (N. M.), Oct. term, 1895.

JOHN P. VICTORY, solicitor general, for the territory.

The court did not err in instructing the jury that their verdict should be guilty of murder in the first degree or not guilty. Territory v. Young, 2 N. M. 93, 104; Territory v. Thomason, 4 Id. (Gil.) 154; Sharf v. U. S., 156 U. S. 51; State v. Lane, 64 Mo. 319–324; State v. Musick, 101 Id. 260; Robinson, 84 Ga. 674; State v. Estep, 44 Kan. 572–575; O'Brien v. Comm., 89 Ky. 354.

It is the duty of defendant when dissatisfied with the instructions given by the court on any point to offer a proper instruction covering that point. This was not done in this case, and defendant has no right to complain. Territory v. O'Donnell, 4 N. M. (Gil.) 196 and citations.

Even if an instruction was asked by defendant that, if defendant killed deceased in the heat of passion, the offense would not be murder in the first degree, the same would be refused by the court, because

there was no evidence in the case to justify or require it.    Territory v. Anderson; 4 N. M. (Gil.) 214;    Territory v. Baker, Id. 236.

LAUGHLIN, J.—The plaintiff in error, Dionicio Sandoval, was indicted for murder in the first degree, on an indictment charging him with having on the twenty-ninth day of July, 1895, at the county of Bernalillo in said territory of New Mexico, shot and killed one Victoriano Tenorio.

At the October, 1895, term of the district court for said county, the said Dionicio Sandoval was tried and found guilty of murder in the first degree; and after motions for new trial and in arrest were made, argued and denied, defendant was sentenced to be hanged, and error was sued out and stay of execution was granted, and the case is here on errors assigned in the court below, and such as are deemed pertinent to the proper decision of the case will be considered in the opinion.

There are some thirty-six errors assigned for reversal, by plaintiff in error's counsel, but only such of these will be considered as seem necessary for the proper determination of the case.    There were only three witnesses who testified in this case, and they were all eyewitnesses to it, and within a few yards of the place where the homicide occurred; two testified in behalf of the prosecution, and the defendant only in his own behalf.    There is no dispute as to the place where or the time when the shot was fired which killed the deceased, Victoriano Tenorio; nor is there any dispute as to whose gun it was from which the fatal shot was fired, nor as to where the fatal bullet entered the body of the deceased.    The facts are clearly shown by the testimony of all the witnesses.

The only controversy shown by the testimony is as to how the gun was fired.

The testimony of all the witnesses shows that the

deceased, the defendant, and the two witnesses for the prosecution, were all sheep-herders, and that on the evening and a short time prior to the occurrence of the homicide, the defendant whose flock and sheep-camp was some two or three miles distant from the place of the homicide, came with a forty-four caliber Winchester rifle, to the camp-fire of the deceased, about 7 or 8 o'clock in the evening, and after saluting the deceased and the two witnesses who were near the camp-fire the defendant took a seat upon a water keg with his rifle by him, and the witnesses for the prosecution testify, "that deceased asked defendant to be seated upon some sheep-skins," which defendant declined to do, saying, "he was all right where he was, and was doing no harm;" then deceased said "no, but I suppose you will be more at ease lying on the sheep-skins. Then Donicio Sandoval (defendant) told Victoriano Tenorio (deceased) what was the reason he had said on his count he had so many lambs in his fold without any dames or mothers,—mavericks; and Victoriano answered, I didn't say that; what I did say was, you didn't deliver to me all my sheep. Then Dionicio Sandoval said: You are a liar. And he said, I don't lie. And then he, defendant, shot." These are substantially the same facts testified to by the other witnesses for the prosecution. The testimony further shows that the fatal bullet entered near the armpit of the deceased, and he fell to the ground and died immediately, and only said after he was shot, "take hold of me." It further appears from the testimony on the part of the prosecution, the deceased was sitting down at the time he was shot, and that the defendant was standing up. This state of facts makes out a clear case of murder in the first degree beyond any doubt, as defined by our statute on that subject; and the instructions given by the court below on murder in the first degree was full and sufficient on that degree.

The testimony of the defendant in his own behalf on this particular point is as follows, to wit:

"Q. Were you camping that night close—how far were you camping from the deceased's camp, Victoriano Tenorio?   A. About three miles.

"Q. Did you go to the camp that night of Tenorio?   A. Yes, sir.

"Q. State what you saw.   A. I told him I went over there to tell him to fix his camp in the corral, to await the boss; that I would fix my corral on one side, and to ask him, also, why was he talking about me touching my honor without any cause.

"Q. What was said and done after you got there? A. He told me then that I lied, and he said what had I to say about him that I was so and so, touching my credit.

"Q. Just tell what was said.   A. Then he jumped up as though to strike me, and then he got hold of the rifle and in the twist we gave it in getting up the gun went off, and he was shot.   I didn't do it intentionally."

On cross-examination the defendant testified as follows, to wit:

"Q. Did you level your gun on him then, or which way did you hold your gun?   A. I had my rifle on one side, and when he came upon me, I took hold of the rifle, and we got to struggling for the rifle.

"Q. Where did he grab the rifle?   A. He didn't, I had it.

"Q. Didn't he grab hold of it?   A. When I kinder got out and he caught hold of the rifle, and he wanted to take hold of me and we struggled for it, and in the twist we made the rifle went off.

"Q. Where did he catch hold of the rifle?  A. Right on the other side of me, straight as we had it.

"Q. Where did you have the rifle?   A. I had the barrel.

"Q. Did you pick it up by the barrel when you picked it up? A. I took hold of it about the middle of the rifle, about where the cartridge boxes are.

"Q. Did you have hold of it with one hand or both? A. No, I had it sitting by one side of the keg.

"Q. When you picked it up did you pick it up with one hand or with both hands? A. With one hand, and then he caught hold of it himself, and then we both had the rifle.

"Q. Which hand did you pick it up with? A. With the left.

"Q. You took it about the middle, then did you take hold of it with your right hand, too? A. Yes, sir; by the barrel.

\*    \*    \*    \*    \*    \*    \*    \*    \*

"Q. You are right handed when you shoot, do you shoot from your right shoulder? A. On the right side.

"Q. You say he grabbed hold of the barrel also? A. Yes, sir.

"Q. With his hands outside of yours, or between your hands? A. One of his hands he had in the middle and the other over here (witness illustrates).

"Q. And he had hold of the gun toward the end? A. Yes, sir.

"Q. And in the scuffle you don't know how the rifle went off? I do not know.

"Q. Did you pull the trigger? A. (Witness illustrates) I do not know how the rifle cocked itself, perhaps in the struggle we had there it got cocked and went off."

On this testimony counsel for plaintiff in error contend that the court should have instructed the jury with respect to murder in the second and third degrees. The statute defines murder in the second degree as follows, to

MURDER: evidence: instruction.

wit: "Sec. 5. All murder which shall be perpetrated without a design to affect death, by a person while engaged in the commission of a misdemeanor, or which shall be perpetrated in the heat of passion without design to affect death, but in a cruel and unusual manner, or by means of a dangerous weapon, unless it is committed under such circumstances as constitute excusable or justifiable homicide, or which shall be perpetrated unnecessarily, either while resisting an attempt by the person killed to commit any offense against person or property, or after such attempt shall have failed, shall be deemed murder in the second degree." Laws 1891, p. 150.

Comparing the testimony with this statute, is it clearly apparent that the homicide was not "perpetrated without a design to effect death, by a person while engaged in the commission of a misdemeanor," because it is not shown or claimed that there was any attempt to commit a misdemeanor on the part of either the deceased or the defendant, but it was simply a dispute between defendant and the deceased about some sheep. Nor is there anything to show that the homicide was "perpetrated in the heat of passion without design to effect death, but in a cruel and unusual manner, because there is no testimony that any "heat of passion" on the part of either the defendant or the deceased, for it is plain according to defendant's own testimony, that it was perpetrated while they were engaged in a struggle over the possession of the gun. Nor was the death effected in a "cruel and unusual manner," but by a gunshot, in the latest and most approved manner and style of taking human life under such circumstances. Territory v. Pridemore, 4 N. M. 275. The death was effected "by means of a dangerous weapon," but if defendant's testimony is to be taken as true, it was committed under such circumstances as to constitute "excusable homicide" *    *    *

because defendant says, in the struggle for the gun it went off, shot. and killed the deceased, and that "I didn't do it intentionally." Nor is there anything to show that the killing was "perpetrated unnecessarily" "while resisting an attempt" by the deceased to "commit any offense against the person or property" of the defendant, or after any such attempt had failed; because there was no such attempt made on the part of the deceased.

The death of the deceased was effected by the defendant, and he did it either with a "design to effect death" or he did it by accident, and if he did it with a design to effect death, without any just provocation, then it was murder in the first degree, according to the testimony before the jury, and if, as he says, he "didn't do it intentionally," then it was excusable homicide; and as to which of these two propositions was correct it was within the province of the jury to determine. And it would have been error on the part of the court to have instructed in the second degree, because there was no evidence tending to establish that grade of the crime charged. Territory v. Fewel, 5 N. M. 34; State v. Alexander, 66. Mo. 148.

Murder in the third degree is defined by our statute to be: "Sec. 6. Every killing of a human being by act, procurement, or culpable negligence of another, which, under the provisions of this act, is not murder in the first or second degees, and which is not excusable or justifiable homicide as now defined by law, shall be deemed murder in the third degree." Laws 1891, p. 150.

The testimony shows that the killing took place at the Valle de San Isedoro, some fifteen miles distant from any settlement, and in the nighttime, and the defendant had a right to have his gun with him at that time and place. There is nothing whatever in the testimony in the record to show that the homicide

occurred from any unlawful act or intent on the part
of the defendant; nor is there anything to show that
the killing was brought about by the "procurement or
culpable negligence" of the defendant.   He says, in
effect, "that he was sitting upon a water keg with his
gun by his side, some feet from the deceased, and that
the deceased rushed upon him and seized hold of the
gun, and in the struggle for the possession of the gun
it went off, and the deceased was shot, and instantly
killed," and that "he didn't do it intentionally."
Defendant did nothing in respect to the "procure-
ment" of the death of the deceased; nor is there any-
thing to show any act of "culpable negligence" on the
part of the defendant.   He had a right to be at the
place of the homicide and to have his gun with him
there.   According to his testimony he was not using
the gun in any unlawful or threatening manner what-
soever.   Negligence is usually defined to be "the omis-
sion to do something which a reasonable man, guided
by those considerations which ordinarily regulate the
conduct of human affairs, would do, or doing some-
thing which a prudent and reasonable man would not
do." Blyth v. Birmingham Waterworks, 11 Exch.
784; 2 Bowd. Law Dic.; Thompson on Trials, sec. 1662.

It is plainly to be seen that there was no evidence
in the case warranting an instruction of murder in the
third degree.   Territory v. Fewel, supra; Territory v.
Pridemore, 4 N. M. 275.

On the question of excusable homicide the court
charged the jury as follows:

"If you believe from the evidence that such kill-
ing was the result of accident, or misfortune during
the struggle between the defendant and
the deceased, in which the deceased was
seeking to disarm defendant, and said
rifle was accidentally discharged, or if
such evidence creates in your mind a reasonable doubt

MURDER: evi-
dence: degrees:
instruction.

as to whether the defendant unlawfully, deliberately, and of his premeditated malice killed the deceased, or if from any other reason you are not satisfied beyond a reasonable doubt of defendant's guilt, you should find the defendant not guilty, but if all the evidence in the case leaves in your minds, after careful consideration of the same, an abiding conviction of defendant's guilt, then you should so find him.''

\*    \*    \*    \*    \*    \*    \*    \*

"Your verdict in this case will either be that the defendant is guilty of murder in the first degree, or that he is not guilty, you being instructed that you are confined to one of these two forms of verdict.''

Counsel for appellant contend that error intervened to the prejudice of appellant by reason of the last instruction quoted, because the court said, ''You are instructed that you are confined to one of these two forms of verdict.'' There was no error in giving this instruction to the jury. Judge BRINKER, in Fewel's case, supra, after quoting approvingly from Alexander's case, supra, in which Judge HENRY said, ''He was either guilty of murder in one of the degrees in which an intent to kill is an element, or the killing was justifiable,'' said, ''And the attention of the jury should have been confined to that issue.'' In Young's case, supra, the same instruction complained of here was given and was assigned as error, and Chief Justice PRINCE, in an able opinion, said, in passing on this alleged error: ''The statement of the court below that 'the verdict should be guilty of murder in the first degree, or not guilty,' was exactly equivalent to the other statement. There is no evidence before you tending to show that the killing is murder in any other degree than the first.''  \*  \*  \*  And it was held not to be error. It is plain, therefore, that this court has held in effect, if not in direct words, that it is the duty of the trial court to confine the attention

of the jury to the issues involved by the evidence, and the court, at its peril, must instruct on all the law applicable to all the evidence, and then confine the jury to those issues alone. Territory v. Friday, 8 N. M. 204.

These instructions submitted all the evidence in the case fairly to the jury; and it was either murder in the first degree, or it was excusable homicide, and as to which it was, was the province of the jury to determine. And they found that it was murder in the first degree.

There are many other errors assigned but it is deemed unnecessary to consider them. The record shows that the defendant had a fair and impartial trial, and there is no reversible error in the record of this case, and for the foregoing reasons the judgment of the court below is affirmed. And it is so ordered.

SMITH, C. J., and HAMILTON and BANTZ, JJ., concur.